# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOEL WHITEHOUSE, ELIANA WHITEHOUSE, and JUSTIN WHITEHOUSE, minor children of JOEL WHITEHOUSE, <br> Plaintiffs, <br><br> v. <br><br> MAYOR JOHN PIAZZA, Chief of Police, KEVIN SHAUGHNESSY, UNKNOWN LEMONT POLICE OFFICERS, and THE VILLAGE OF LEMONT, <br> Defendants. | No. 05 C 1638 <br><br> Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joel Whitehouse filed suit under 42 U.S.C. § 1983 (2005) and Illinois law, claiming: that he was assaulted by Mayor John Piazza after Piazza confronted him about an altercation between their children; that Police Chief Kevin Shaughnessy and unknown Lemont police officers refused to issue a police report or a criminal complaint about Piazza's assault of Whitehouse; and that Piazza directed the police to prevent Whitehouse from filing a police report in retaliation for Whitehouse's plan to disclose Piazza and Shaughnessy's threats and intimidation.[1] Piazza, Shaughnessy, and the Village of Lemont ("Village") have filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiffs

---

[1] Whitehouse is suing for intentional infliction of emotional distress on behalf of his children. He asserts the remainder of the claims on his own behalf. For purposes of clarity, when we refer to "Whitehouse," we are referring only to Joel Whitehouse. When we refer to "Plaintiffs," we are referring to Whitehouse and his children.

have failed to state a claim upon which relief can be granted.² For the following reasons we deny defendants Piazza and Shaughnessy's motions to dismiss. (R. 20-1; R. 26-1.) We grant in part and deny in part the Village's motion to dismiss ( R. __-1).

## RELEVANT FACTS³

On February 22, 2005, Piazza's son struck Whitehouse's son on a school bus. (R. 19, Pls.' Am. Compl. at 2.) After he learned of this altercation, Whitehouse called his son's school and asked to view the bus security videotape that showed the incident. (*Id.*) He was told on one occasion that the videotape did not exist and on another occasion that the tape had been ordered preserved. (*Id.* at 3.) Whitehouse alleges that Piazza requested, in his capacity as Mayor, that the tapes be withheld so as to not harm his re-election campaign.⁴ (*Id.*) Piazza discovered that Whitehouse was attempting to view the videotape and he drove to Whitehouse's home to confront Whitehouse. (*Id.*) When Piazza arrived, he parked his car in front of Whitehouse's driveway, blocking in Whitehouse's vehicle. (*Id.* at 4.) Whitehouse was standing outside his home with his two minor children when Piazza arrived. Although Whitehouse never invited or authorized Piazza to enter his property, Piazza exited his vehicle and approached Whitehouse. (*Id.*) Piazza verbally threatened and cursed at Whitehouse and challenged Whitehouse to a

---

²The Village adopts and incorporates the arguments and caselaw from Piazza and Shaughnessy's motions to dismiss in so far as they are relevant to claims brought against the Village. (R. 37, Vill. of Lemont's Reply at 1.) The Village's motion to dismiss the Plaintiffs' amended complaint was not given a record number and will be referenced as R. ___.

³The following facts are taken directly from the amended complaint and we assume that the facts are true for purposes of resolving this motion.

⁴Whitehouse and Piazza are political opponents. At the time of the incident, Whitehouse was seeking election to public office in the Village of Lemont in opposition to a candidate of Piazza's party and Piazza was seeking re-election to the office of mayor. (*Id.* at 2, 4.)

physical fight. (*Id.*) Piazza told Whitehouse that he ran the village and that he was not going to allow Whitehouse to obtain the bus videotape with the election 45 days away. (*Id.*) Whitehouse repeatedly told Piazza that he was trespassing and asked him to leave his property. (*Id.*) At one point, Piazza chest bumped Whitehouse in an effort to provoke Whitehouse into a physical fight. (*Id.* at 4-5.)

Whitehouse called 911 during this confrontation with Piazza. (*Id.* at 5.) In response, Piazza told Whitehouse that the police were not going to do anything because he was the mayor and Shaughnessy was his appointee. (*Id.*) At this point, Piazza allegedly called Shaughnessy and told him to prevent Whitehouse from pursuing any criminal investigation or charges against Piazza.

Whitehouse retreated into his house to wait for the police, but after repeated calls to 911, no units arrived. Approximately 25 minutes after Whitehouse's first 911 call, Shaughnessy arrived at Whitehouse's home. Shaughnessy tried to intimidate Whitehouse and his minor children into saying that nothing had happened. (*Id.*) Whitehouse repeatedly requested to file a criminal complaint against Piazza, but Shaughnessy refused. (*Id.* at 7.)

Later that day, a Village police officer contacted Whitehouse and asked him to come down to the police station to complete paperwork regarding the incident. (*Id.*) Whitehouse, accompanied by his attorney, went down to the station and the police informed him that criminal complaints were going to be issued against Piazza for trespassing, battery and assault. (*Id.*) While an unknown police officer was writing the complaint, Shaughnessy called and, at the behest of Piazza, instructed the police officers not to issue the criminal complaints and not to release the prepared police reports to Whitehouse or his attorney. At this point, the unknown

Village police officers refused to write anything further in the reports or to speak with Whitehouse and his attorney. (*Id.*)

Whitehouse filed this suit pursuant to Section 1983, claiming that his threat to expose Piazza and Shaughnessy was protected speech under the First Amendment and that Piazza and Shaughnessy acted under color of state law in an attempt to stifle his speech by preventing him from filing a police report. (*Id.* at 8.) Furthermore, Whitehouse claims that the unknown police officers' refusal to file a police report at the behest of Piazza and Shaughnessy was retaliation for Whitehouse's threat to expose Piazza and Shaughnessy's misconduct and therefore violated the First Amendment. (*Id.*) In addition to his federal claims, Whitehouse has also alleged various state law claims including assault, battery, intentional infliction of emotional distress, and trespass. (*Id.* at 9-10.) The final count of the complaint is against the Village under 745 ILCS 10/9-102 (2005), which directs a municipality to pay any tort settlement or compensatory damages for which it or an employee acting in the scope of employment is liable. (*Id.* at 11.)

## LEGAL STANDARDS

Under Rule 12(b)(6), a party may move to dismiss for failure to state a claim upon which relief can be granted. This Court will only grant a motion to dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In resolving a 12(b)(6) motion, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). "[A]ll the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

*Conley*, 355 U.S. at 47 (citations omitted).

## ANALYSIS

I. **Section 1983 First Amendment Retaliation Claim**

Whitehouse has alleged that Piazza and Shaughnessy violated his First Amendment rights as protected by Section 1983 by conspiring to prevent the filing of legitimate criminal charges against Piazza in retaliation for Whitehouse's political opposition to Piazza and threat to expose Piazza's misbehavior. To state a claim under Section 1983, a plaintiff must allege that the conduct complained of was committed by a person acting under color of state law. *Case v. Milweski*, 327 F.3d 564, 566 (7th Cir. 2003). A plaintiff must also allege that the conduct deprives the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Id.* Section 1983 is not the source of any rights, but rather it is a means of vindicating a federal right. Consequently, when a court analyzes the sufficiency of a plaintiff's Section 1983 claim, it must identify the specific constitutional right allegedly infringed and apply the standards applicable to that particular constitutional provision. *Gray v. City of Chicago*, 159 F. Supp. 2d 1086, 1089 (N.D. Ill. 2001).

A. **Person acting under color of state law**

Defendants may be found to have acted under color of state law "when the state has cloaked the defendants in some degree of authority—normally through employment or some other agency relationship." *Case*, 327 F.3d at 567. Whitehouse alleges that Piazza and Shaughnessy acted under color of state law and within the scope of their employment as Mayor and Chief of Police, respectively, when they, along with several Village officers, refused to let him file a police report or criminal charges against Piazza. *See Hafer v. Melo*, 502 U.S. 21, 28

5

(1991) (holding that state officials sued in their individual capacities are "persons" within the meaning of Section 1983 and act under color of state law regardless of whether they act in accordance with their authority or misuse it). These allegations are sufficient to survive a Rule 12(b)(6) motion. *Compare Pickrel v. City of Springfield*, 45 F.3d 1115, 1119 (7th Cir. 1995) (denying a 12(b)(6) motion where the plaintiff alleged that the defendant, an off duty city police officer, possibly acted under color of state law when he arrested her while on duty as a private security guard in a restaurant).

### B. Deprivation of a federal right

Our next determination is whether Whitehouse has pled successfully that he was deprived of a constitutional or statutory right. In this case, Whitehouse is claiming First Amendment retaliation. To plead a First Amendment retaliation claim, the plaintiff must allege that he engaged in constitutionally protected speech and that the defendants retaliated against him because of his speech. *Love v. City of Chicago*, 5 F. Supp. 2d 611, 613 (N.D. Ill. 1998).

#### 1. Constitutionally Protected Speech

Although Whitehouse's complaint alleges only that he was prevented from speaking, the First Amendment protects even the threat of speech.[5] *Belk v. Town of Minocqua*, 858 F.2d 1258, 1260 (7th Cir. 1988). For example, in *Belk*, the Town Board removed the plaintiff from her position after she stated her intention to pursue a grievance with the Board about her employment reclassification. *Id.* The court treated the plaintiff's intention to petition the Town Board as First

---

[5]Contrary to Piazza's assertion that Whitehouse unsuccessfully tries to fit his claim in the mold of public employee First Amendment cases (R. 22, Piazza's Mot. to Dismiss at 6-7), one does not have to be a public employee in order to make a claim for First Amendment retaliation, *see, e.g., Johnson v. Collins*, 2003 WL 21038626 (N.D. Ill. May 2, 2003).

Amendment speech. *See id.* at 1263 (stating that the "content, form and context" of Belk's threatened appeal of the Board's decision would have revealed improprieties by the Town Board).

Here, Whitehouse's intent to disclose the threats and intimidations of Piazza and Shaughnessy qualifies as protected speech. Just as the plaintiff in *Belk* did not have to actually pursue a grievance with the Town Board in order for her speech to be protected, Whitehouse did not have to actually speak out about Piazza and Shaughnessy's intimidation in order to engage in protected speech under the First Amendment. *Id.* at 1262 ("The Town could not, however, terminate [the plaintiff's] employment because of her exercise or threatened exercise of a constitutionally protected right.") (*citing Perry v. Sinderman*, 408 U.S. 593, 597 (1972)).

Piazza argues that Whitehouse fails to state a claim because his speech was not of public concern. It is well established that speech that serves a private or personal interest, as opposed to a public one, has reduced constitutional value. *Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749, 759 (U.S. 1985) (noting that "[T]he Court has frequently reaffirmed that speech on public issues occupies the 'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection. In contrast, speech on matters of purely private concern is of less First Amendment concern.") (citations omitted). To determine whether Whitehouse spoke as a citizen on a matter of public concern, the court must consider the "content, form and context of [the contested] statement, as revealed by the whole record." *Spiega v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004) (quoting *Connick v. Myers*, 461 U.S. 138 (1983)). However, the fact that the speaker has a personal stake in the subject matter of the speech does not necessarily remove it from the scope of public concern. *Id.* at 935, 938.

Applying these principles, Whitehouse has pled sufficiently that his speech was protected

7

by the First Amendment. Although Whitehouse had a private interest in filing the report, he has alleged that the report would impact local campaigns for public office. Because he was preparing to expose the misbehavior of a local official to the public, his speech was of public concern. *Talley v. City of Chicago*, 2001 WL 1159241, *2 (N.D. Ill. Sept. 28, 2001) (holding that the "right to criticize public officials is at the heart of the First Amendment" and is a matter of "great public concern"). Furthermore, when this Court considers the context (an altercation between Whitehouse and Piazza resulting in police involvement) and the form of the speech (a police report), these allegations are sufficient to establish that Whitehouse's intended speech was of sufficient public concern to enjoy First Amendment protection.

### 2. Retaliation

Whitehouse's allegations that Piazza and Shaughnessy retaliated against him because of his protected speech also satisfy the pleading standards for First Amendment retaliation. He alleges that he planned to disclose Piazza and Shaughnessy's threats and acts of intimidation and that they retaliated by directing Village police officers to refuse to issue a police report or file charges against Piazza. In response, Piazza argues that the alleged retaliatory act did not violate Whitehouse's constitutional rights therefore Whitehouse has not stated a cognizable claim. Piazza relies on *Lunini v. Grayeb* for the proposition that a citizen does not have the right to force the police to charge someone with a crime. 395 F.3d 761, 772 (7th Cir. 2005). In that case, the police took down both parties' account of the incident at issue and made out a police report. After they wrote the report, the police determined that there was insufficient evidence to make an arrest. *Id.* at 764-65.

The instant case can be distinguished on the facts. Preventing Whitehouse from filing a

criminal complaint against Piazza is not the same as refusing to charge or arrest Piazza for his alleged misconduct. In contrast to *Lunini*, the Lemont police allegedly refused to take the first step of issuing a police report or investigating the charges to see if any of the claims had merit. *See, e.g., Hansberry v. MacElree*, 1993 WL 492809, *5 (E.D. Pa. Nov. 23, 1993) ("While a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another, an allegation of discrimination in the provision of police protection can state a claim for the violation of the Equal Protection Clause of the Fourteenth Amendment.") (citations omitted); *see also Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir.1982). Even though a person does not have a constitutionally protected right in the prosecution of another, the Constitution recognizes a person's right to speak without retaliation by the police. Here, Whitehouse is claiming that he was treated differently because of the content of his speech; consequently, the police's refusal to release the police reports or investigate any potential criminal charges against Piazza may constitute retaliation. *See Farrar v. City of Chicago*, 291 F. Supp. 2d 747, 752 (N.D. Ill. 2003) (holding that the plaintiff's allegations that she had previously sued the city and as a result the police refused to investigate threats being made against her adequately stated a claim for First Amendment retaliation).

Shaughnessy argues that the claim of retaliation must fail because Whitehouse did not suffer any adverse action or injury from the failure to arrest or charge Piazza. We reject this argument. Under the law of this Circuit, "[a]ny deprivation under color of law that is likely to deter the exercise of free speech, whether by an employee or anyone else, is actionable . . . if the circumstances are such as to make such a refusal an effective deterrent to the exercise of a fragile liberty." *Chicago Reader v. Sheahan*, 141 F. Supp. 2d 1142, 1145 (N.D. Ill. 2001) (*citing Power*

*v. Summers*, 226 F.3d 815, 820 (7th Cir. 2000)). The alleged actions of Piazza and Shaughnessy has the effect of chilling speech because if a plaintiff knew that the potential outcome of engaging in the protected speech is that one loses his ability to file a police report, then he would be less likely to engage in that speech. *Id.* at 1144 (holding that the requisite level of harm is the "actual or potential danger that the speech . . . will be chilled). Accordingly, we hold that Whitehouse has stated a claim for First Amendment retaliation pursuant to Section 1983.

## II. Contradictions in the Original and Amended Complaints

Piazza argues at length that the original complaint and the amended complaint contradict one another. He alleges that the allegations contained in the original complaint were binding admissions and it was improper for Plaintiffs to allege directly contradictory statements of fact in the amended complaint. "The purpose of a motion to dismiss is not to pick apart a complaint for possible inconsistencies, but to examine whether it appears beyond doubt that plaintiffs can prove no set of fact in support of their claim that would entitle them to relief." *Chen v. Wang*, 1996 WL 732517, *11 (N.D. Ill. Dec. 17, 1996). This must be true even when two contradictory complaints are at issue. *See, e.g., McCullah v. Gadert*, 344 F.3d 655, 656, 659 (7th Cir. 2003).

Generally, a case should not be dismissed because of inconsistencies between the original and the amended complaint unless the circumstances are such that the court is required to fall back on the original complaint in the interest of justice. *See, e.g., Wallace v. N.Y. Dep't of Corrections*, 1996 WL 586797, * 2 (E.D. N.Y. Oct. 9, 1996) (relying on the plaintiff's original complaint instead of his amended complaint because plaintiff blatantly changed the statement of facts in response to the defendant's motion to dismiss, directly contradicting the facts in the original complaint). To allow dismissals on this ground would defeat the purpose of allowing a

plaintiff to amend; frustrate Rule 12(b)(6)'s requirement that all factual allegations be accepted as true; and complicate Rule 8(a)'s requirement that the pleadings only have to provide fair notice of the basis for plaintiff's claims. In fact, it is not uncommon for a plaintiff to have inconsistencies within the body of one complaint or between complaints. *See, e.g., Jackson v. City of Chicago*, 1996 WL 734701, *2 n.4. (N.D. Ill. Dec. 18, 1996) (chastising a plaintiff for his sloppy drafting, but not dismissing the complaint despite its numerous internal contradictions and errors).

While the original and amended complaints in this case could be read to infer inconsistent factual statements, that is not dispositive. Several key facts remain consistent between the complaints: Chief Shaugnessy came to Whitehouse's house to intimidate Whitehouse and his children into saying that nothing happened (R. 1, Pls.' Compl. at 4-5; R. 19, Pls.' Am. Compl. at 6) and the Village Police refused to file a police report of the incident after receiving a phone call. (R. 1, Pls.' Compl. at 5; R. 19, Pls.' Am. Compl. at 7.)

Viewing the amended complaint in the light most favorable to Whitehouse, it provides facts that the original complaint left out in order to state a 1983 claim that can withstand a motion to dismiss. The original complaint did not foreclose an inference that Piazza used his authority as the mayor in order to violate Whitehouse's rights. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 639 (7th Cir. 2004) More importantly, the amended complaint provides more notice than the original complaint regarding the underlying basis for Whitehouse's claims. This is all that the Rules require. *Conner v. Ill. Dep't of Natural Res.*, 413 F.3d 675, 679 (7th Cir. 2005) ("[Plaintiff is] not required to set forth specific facts and legal theories of her case in her complaint. Fed. R. Civ. P. 8. Pleading is no longer a procedural game of skill at which

counsel must be adept in order to insure the decision of his case on its merits. . . . The principal function of the complaint is to give the court and the opposing party sufficient notice of the allegation to which a response must be made.") (citations omitted).

### III. 745 ILCS 10/9-102 Claim against the Village

We have held that Plaintiffs' amended complaint states a cause of action against Piazza and Shaughnessy for actions that may have occurred during the scope of their employment; therefore, the Village may have to indemnify Piazza and Shaughnessy for any non-punitive damage awards pursuant to section 10/9-102. Municipalities are not, however, liable for punitive damages under Section 1983. *Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981). Furthermore, under 745 ILSC 10/2-302, a local public entity cannot indemnify employees for punitive damage awards; therefore, the Village will not have to indemnify Piazza or Shaughnessy for any punitive damages that may be awarded as a result of the state law claims. *See also* 745 ILSC 10/2-102 ("Notwithstanding any other provision of law, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party."). Accordingly, the Village will not have to indemnify Piazza and Shaughnessy for any punitive damages that may be awarded to Whitehouse or his children as a result of this litigation. (R.19, Pls.' Am. Compl. at 8-10.)

### IV. Remaining State Law Claims

The only argument that Piazza and Shaughnessy make with respect to the state law claims is that this Court should decline to exercise supplemental jurisdiction to address these claims. (R. 22, Piazza's Mem. at 9; R. 27, Shaughnessy's Mem. at 8-9.) Provided that a federal court has original jurisdiction over a claim, federal law provides that the court "shall have supplemental

jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367. Plaintiffs' state law claims derive from the same incident as the federal law claim. Since Whitehouse has successfully stated a claim under Section 1983 and Defendants have not made any substantive arguments about why the state law claims should be dismissed, this Court will exercise its supplemental jurisdiction over the state law claims.

## CONCLUSION

For the reasons set forth above, we deny Piazza and Shaughnessy's motions to dismiss. (R. 20-1; R. 26-1.) We grant the Village's motion to dismiss to the extent that it relates to Plaintiffs request for punitive damages, and we deny the remainder of the motion to dismiss. (R. __.)

The parties are requested to exhaust all remaining settlement possibilities for this controversy. A status hearing will be held in open court on November 8, 2005 at 9:45a.m.

**ENTERED:**

Judge Ruben Castillo
United States District Court

**Dated: October 25, 2005**

13