# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOEL WHITEHOUSE, ELIANA WHITEHOUSE and JUSTIN WHITEHOUSE, Minor Children of JOEL WHITEHOUSE, <br><br> Plaintiffs, <br><br> v. <br><br> MAYOR JOHN PIAZZA, CHIEF OF POLICE, KEVIN SHAUGHNESSY, UNKNOWN LEMONT POLICE OFFICERS, and THE VILLAGE OF LEMONT, <br><br> Defendants. | No. 05 C 1638 <br><br> Judge Nan R. Nolan |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Joel Whitehouse and his two minor children, Justin and Eliana Whitehouse, filed suit against Lemont, Illinois Mayor John Piazza, Lemont Police Chief Kevin Shaughnessy, and the Village of Lemont alleging unlawful retaliation in violation of 42 U.S.C. § 1983, assault, battery, trespass, and intentional infliction of emotional distress. On February 28, 2007, the court granted summary judgment in favor of Defendants on all of Plaintiffs' claims. *See Whitehouse v. Piazza*, No. 05 C 1638, 2007 WL 641543 (N.D. Ill. Feb. 28, 2007). Defendants have moved for costs pursuant to FED. R. CIV. P. 54(d)(1) and 28 U.S.C. § 1920. Piazza additionally seeks attorneys' fees under 42 U.S.C. § 1988(b), and sanctions under FED. R. CIV. P. 11. For the reasons set forth here, the motions for costs are all granted in part and denied in part; Piazza's motion for attorneys' fees and sanctions is denied.

## BACKGROUND

This opinion assumes the reader's familiarity with the court's earlier decision, *Whitehouse*, 2007 WL 641543, at *1-7, and relevant facts are repeated here only as necessary to resolve the motions for fees and costs.

On February 22, 2005, eight-year-old Justin Whitehouse complained that Piazza's seven-year-old son had hit and scratched him during a ride home on a school bus. *Whitehouse*, 2007 WL 641543, at *2. At the time, Joel Whitehouse was running for trustee of the Village of Lemont as part of a political group opposed to Mayor Piazza. *Id.* at *1. Whitehouse called the school principal claiming that the incident constituted an assault and/or battery, and threatened to "sue everybody and call Channel 5." *Id.* at *2. On February 25, 2005, Piazza drove over to the Whitehouse residence to discuss the incident, but the two men argued and Whitehouse ended up calling 911. *Id.* at *2-3.

Sergeant Jerrold Lehmacher received the dispatch and realized that it involved Whitehouse and Piazza. Chief Shaughnessy, too, knew about the disturbance because he received a cellular phone call from Piazza informing him of Whitehouse's 911 call. *Id.* at *3. At Shaughnessy's instruction, Lehmacher met with the Chief a short distance from the Whitehouse residence to discuss the situation, and then both men proceeded in separate cars to the Whitehouse home, arriving approximately ten minutes after receiving the 911 call. *Id.* at *3-4. Shortly thereafter, Officer Peter Moranda arrived as well. Whitehouse told the officers that Piazza had come onto his property, yelled at him, and bumped him in the chest to provoke a fight. Whitehouse said that he wanted to file misdemeanor charges against Piazza for assault, battery, and trespass. *Id.* at *4.

While Whitehouse was speaking with the officers, Justin stepped out into the garage to observe what was transpiring. Whitehouse told his son to come out and tell Chief Shaughnessy about the incident with Piazza. Shaughnessy and Lehmacher objected that it was inappropriate to involve Justin given his age and, according to Justin, Shaughnessy then went over to him and told him that nothing had happened except a friendly conversation between Piazza and his dad. *Id.* Justin testified that he was afraid, but that he nonetheless re-enacted the events for the officers. Notably, Justin never said that Piazza had chest-bumped Whitehouse. *Id.*

Shaughnessy advised Whitehouse that the police would prepare and file reports but would not make any arrests or file any complaints pending further investigation. Shaughnessy noted that Whitehouse's own son did not corroborate his story as to any physical contact. *Id.* After leaving the Whitehouse residence, Chief Shaughnessy drove to Piazza's house to investigate Whitehouse's claims, but Piazza was not home. When Shaughnessy spoke with Piazza by telephone later that evening, Piazza confirmed that he went to the Whitehouse residence but denied any physical contact with Whitehouse. *Id.* Officer Moranda interviewed a neighbor to the north of the Whitehouse residence, but no one had heard or seen anything. *Id.* at *5.

Chief Shaughnessy, Sergeant Lehmacher, and Officer Moranda each prepared independent police reports of the incident, and Whitehouse conceded that Lehmacher's report was accurate. *Id.* at *4-5. Whitehouse also admitted that he and his attorney and friend, Richard Kling, were able to read Lehmacher's report at the police station on the evening of February 25, 2005, though pursuant to standard police procedure they were not allowed to have a copy. *Id.* at *5. Notably, Whitehouse declined to write down his personal account of the incident at that time, and he admitted issuing a press release that inaccurately accused the police of refusing to take a police report. *Id.* at *5, 6.

The Lemont police sent copies of their reports to Peter Troy and Joseph Magats of the State's Attorney's Office, who concluded that there was no basis for any felony charges against Piazza. Whitehouse on his own contacted Cook County Assistant State's Attorneys Tom Bilyk and Robert Podlasek and asked them to investigate Chief Shaughnessy's actions in "calling off" the 911 call; failing to interview a child witness; and conducting the investigation despite his status as an "interested" witness. *Id.* at *6. After investigating the allegations, Bilyk agreed with Troy and Magats that there was no evidence to support any felony crime of obstruction or conspiracy between the police department and Piazza. *Id.* As for the misdemeanor allegations, Bilyk told

3

Whitehouse that he could have the Bridgeview or Markham courthouses issue a summons for Piazza to appear on his complaints. *Id.*

Unsatisfied with this response, Whitehouse filed this federal lawsuit against Piazza, Shaughnessy, and the Village of Lemont alleging that Defendants retaliated against him for exercising his First Amendment right to political speech, in violation of 42 U.S.C. § 1983. Whitehouse also brought charges against Piazza for assault, battery, and trespass and, without informing his wife, named his children as Plaintiffs to claims of intentional infliction of emotional distress ("IIED"). *Id.* at *7. On February 28, 2007, the court granted summary judgment in favor of Defendants on the First Amendment retaliation claim; found no merit to the IIED claim; and declined to exercise supplemental jurisdiction over the assault, battery, and trespass claims. *Id.* at *7-12.

Defendants now seek to recover their costs of defending Plaintiffs' lawsuit, and Piazza additionally seeks attorneys' fees for all claims and Rule 11 sanctions for the IIED claims.

## **DISCUSSION**

### I. Motions for Costs

Federal Rule of Civil Procedure 54(d)(1) provides that, except when express provision is made in a statute or federal rule of civil procedure, a prevailing party shall be allowed to recover costs, other than attorneys' fees, as a matter of course "unless the court otherwise directs." Rule 54(d) provides a strong presumption that the prevailing party will recover costs, and that presumption is difficult to overcome. *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 945 (7th Cir. 1997). Under 28 U.S.C. § 1920, a prevailing party may recover (1) fees of the clerk and marshal, (2) fees for transcripts, (3) fees for printing and witnesses, (4) fees for copies necessarily obtained for use in the case, (5) docket fees, and (6) compensation of court appointed experts and interpreters. 28 U.S.C. § 1920. In assessing a bill of costs, the court must determine whether the costs are allowable and, if so, whether they are both reasonable and necessary. *Soler v. Waite*,

4

989 F.2d 251, 255 (7th Cir. 1993). *See also Barber v. Ruth*, 7 F.3d 636, 644 (7th Cir. 1993) ("District courts may not . . . award costs not authorized by statute.") Plaintiffs bear the burden of affirmatively showing that Defendants are not entitled to costs in this case. *Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.*, 854 F.2d 219, 222 (7th Cir. 1988).

### A. The Village of Lemont

The Village of Lemont seeks to recover (1) $412.60 for a copy of the transcript of Whitehouse's deposition, and (2) $60 for the cost of duplicating two audiotapes, for a total of $472.60. Plaintiffs do not object to the Village's requests and its motion for costs is therefore granted, with one exception. A majority of courts in this district have held that a prevailing party may not recover the cost of receiving deposition transcripts in a condensed format. *See Roney v. Illinois Dep't of Transportation*, No. 99 C 4941, 2007 WL 1100751, at *4 (N.D. Ill. Apr. 12, 2007) ("[C]osts for condensed transcripts are generally not allowed."); *Rao v. County of Cook, Illinois*, No. 00 C 5838, 2004 WL 856551, at *3 (N.D. Ill. Apr. 21, 2004) ("[W]here the County paid an additional fee to receive deposition transcripts in a condensed format, those additional fees should not be charged to [the plaintiff]; such niceties are purely matters of convenience, not necessity, and these costs are, therefore, not recoverable."). *Cf. Angevine v. WaterSaver Faucet Co.*, No. 02 C 8114, 2003 WL 23019165, at *4 (N.D. Ill. Dec. 23, 2003) (allowing defendant to recover cost of condensed transcript where it demonstrated that such transcripts were used for the summary judgment motion and saved other photocopying expenses). The Village seeks both a full copy of the Whitehouse deposition transcript, and $25 for a condensed version. The $25 is disallowed.

Thus, the Village may recover (1) $387.60 for the Whitehouse deposition; and (2) $60 for the cost of duplicating two audiotapes,[1] for a total of $447.60.

---

[1] In their response brief, Plaintiffs state that they are "willing to pay the Village's costs," and that they "have no objection to Lemont's costs of $412.60." (Pl. Resp., at 2, 13.) Plaintiffs do not expressly mention the $60 for auditotape duplication, but to the extent they have not raised any argument on this matter, any objection is deemed waived. *See, e.g., Luellen v. City of East*

## B. Kevin Shaughnessy

In his bill of costs, Shaughnessy seeks (1) $732.24 for an expedited copy of the transcript of his deposition; (2) $407.60 for a copy of the transcript of Whitehouse's deposition; (3) $10 in on-line legal research costs; (4) $682.60 for a copy of the transcript of the Thomas Hess deposition; and (5) $563.60 for copies of the deposition transcripts of Justin Whitehouse, Eliana Whitehouse, and Jaime Lynn Stalker. In total, Shaughnessy requests $2,396.04 in costs. (Ex. 2 to Shaughnessy Bill of Costs.) Plaintiffs raise three objections to these requests.

First, Plaintiffs argue that they should not be required to pay for an expedited copy of Shaughnessy's deposition transcript. (Pl. Resp., at 13.)[2] There is no dispute that "a prevailing party may recover its costs for deposition transcripts." *Corder v. Lucent Technologies Inc.*, 162 F.3d 924, 928-29 (7th Cir. 1998). The transcript must, however, be necessary to the case, and not merely for the convenience of the attorneys. *Majeske v. City of Chicago*, 218 F.3d 816, 825 (7th Cir. 2000). Shaughnessy claims that he had "no other choice but to request an expedited version" of his deposition "because of the deadlines which the court imposed for closing discovery and for briefing schedules on motions." (Shaughnessy Reply ¶ 2.)[3] The court agrees.

It appears from the records that Shaughnessy's deposition took place on December 30, 2005. (Ex. 2 to Shaughnessy Bill of Costs.) At that time, the district court had set a jury trial for March 20, 2006. (Minute Order of 11/8/05, Doc. 41.) On January 18, 2006, moreover, the district court denied Plaintiffs' motion to extend discovery and continue the trial date. (Minute Order of 1/18/06, Doc. 56.) The parties all consented to this court as of January 24, 2006, but by then,

---

*Chicago*, 350 F.3d 604, 612 n.4 (7th Cir. 2003) (noting that party "failed to raise [an] argument in his opening brief; it is therefore waived.")

[2] Plaintiffs' Response to Defendants' Motions for Fees and Costs is cited as "Pl. Resp., at __."

[3] Defendant Chief Shaughnessy's Reply in Support of his Motion for Allowance of Bill of Costs is cited as "Shaughnessy Reply ¶ __."

Shaughnessy had already ordered and been billed for his deposition transcript. (Ex. 2 to Shaughnessy Bill of Costs (showing billing date of January 13, 2006); Ex. 1 to Shaughnessy Reply (showing invoice date of December 28, 2005).) The court finds that the expedited transcript was reasonable and necessary in this case, and Shaughnessy's request for $732.24 is granted. *See Corder*, 162 F.3d at 929 (affirming district court's finding that "the increased fees for expedited transcripts were justified given the discovery and motion schedule it set for the case."); *Roney*, 2007 WL 1100751, at *4 ("Costs for expedited transcripts are recoverable when, as with regular transcripts, the prevailing party demonstrates expedited transcripts were reasonably necessary.")

Plaintiffs next object that the requested cost for a transcript of the Hess deposition is "well above ($5.21 per page) the customary rate even for expedited delivery and also above the statutory rate set by the federal rules of civil procedure." (Pl. Resp., at 13.) Ordinarily, a prevailing party may recover $3.30 per page for original deposition transcripts, and $0.83 per page for copies. *See Dunn v. Rice*, No. 04-2280, 2007 WL 924027, at *2 (C.D. Ill. Mar. 26, 2007). The Hess transcript is 131 pages in length, so Shaughnessy is entitled to recover $432.30 ($3.30 per page x 131 pages). Shaughnessy has not provided any explanation as to why the court reporting service charged $682.60 for this transcript, and his request for this higher amount is denied.

Plaintiffs finally requested that Shaughnessy submit copies of invoices supporting his bill of costs. Shaughnessy has done so, and all remaining costs not objected to are allowed, with one exception. As noted, a prevailing party generally may not recover the cost of receiving deposition transcripts in a condensed format. *See Roney*, 2007 WL 1100751, at *4; *Rao*, 2004 WL 856551, at *3. Shaughnessy has requested both a full copy of the Whitehouse deposition transcript, and $25 for a condensed version. The $25 is disallowed.

The court is also aware that "[c]ourts in this District have held that computerized legal research expenses may be reimbursable, so long as reasonably incurred, although as part of an attorneys' fee award rather than as costs." *Medline Indus., Inc. v. Medline Prods. Co.*, No. 03 C

7255, 2004 WL 1921020, at *6 (N.D. Ill. July 8, 2004). Shaughnessy has requested $10 for computerized research regarding possible other lawsuits filed by Plaintiffs, but he has not submitted a motion for fees in this case. (Ex. 2 to Shaughnessy Bill of Costs.) Nevertheless, Plaintiffs have not objected to the $10 request and, thus, the court will allow Shaughnessy to recover his computerized legal research costs. *See LaSalle Bank v. City of Oakbrook Terrace*, No. 05 C 3191, 2006 WL 59497, at *4 (N.D. Ill. Jan. 9, 2006) ("[F]ailure to raise [an] argument in [an] opening brief results in a waiver of the argument.")

In sum, Shaughnessy is awarded (1) $732.24 for the expedited copy of his deposition transcript; (2) $432.30 for a copy of the Hess deposition transcript; (3) $382.60 for a copy of the Whitehouse deposition transcript; (4) $10 for computerized legal research; and (5) $563.60 for copies of the deposition transcripts of Justin Whitehouse, Eliana Whitehouse, and Jaime Lynn Stalker, for a total of $2,120.74.

**C.    John Piazza**

Piazza has requested a total of $9,638.88 in costs for deposition transcripts; copying expenses; witness fees; on-line legal research; and a special process server. Plaintiffs first object that Piazza has not submitted any receipts demonstrating that he paid the various expenses. (Pl. Resp., at 14.) The court disagrees. Piazza has attached the invoices for all of his claimed expenses, which is sufficient for purposes of his bill of costs.

Plaintiffs next object to a request for $25 for an E-transcript disk of the December 23, 2005 Whitehouse deposition. (Pl. Resp., at 14.) In fact, Piazza has submitted invoices that include the cost of E-transcript disks for several additional depositions as well: $35 for the December 15, 2005 Whitehouse deposition; $35 for the Piazza deposition; $75 for the depositions of Justin and Eliana Whitehouse and Jaime Lynn Stalker; $35 for the Wendy Peebles deposition; $25 for the Richard Kling deposition; $25 for the Sharon Phelan deposition; $70 for the depositions of Michael Carey,

8

Jr. and Michael Poplawski; $35 for the Paul McGrath deposition; and $35 for the Tom Bilyk deposition. Thus, Piazza actually seeks $395 in E-transcript disks.

As noted earlier, a prevailing party may not recover the cost of a transcript that is provided merely for the convenience of the attorneys. *Majeske*, 218 F.3d at 825. "Absent demonstration to the contrary, courts view ASCII disks as items of convenience for attorneys rather than necessity for litigation." *Shanklin Corp. v. American Packaging Machinery, Inc.*, No. 95 C 1617, 2006 WL 2054382, at *4 (N.D. Ill. July 18, 2006). *See also Angevine*, 2003 WL 23019165, at *4 (sustaining objection to charge claimed for computer diskettes). In the court's view, E-transcripts are the equivalent of ASCII disks and are not recoverable. *See O'Neal v. Altheimer & Gray*, No. 99 C 976, 2002 WL 31109393, at *2 (N.D. Ill. Sept. 18, 2002) ("[C]harges for ASCII diskettes of depositions transcripts or e-transcripts, which are merely for the attorney's convenience and not necessary to litigating the case, are not allowed.") Here, Piazza ordered hard copies of all of the above-mentioned deposition transcripts and, thus, he is not entitled to the additional costs of obtaining the same transcripts in electronic format.

For similar reasons, Piazza may not recover the cost for obtaining condensed copies of these transcripts. *See Roney*, 2007 WL 1100751, at *4 (N.D. Ill. Apr. 12, 2007) ("[C]osts for condensed transcripts are generally not allowed."); *Rao*, 2004 WL 856551, at *3. *Cf. Angevine*, 2003 WL 23019165, at *4 (allowing defendant to recover cost of condensed transcript where it demonstrated that such transcripts were used for the summary judgment motion and saved other photocopying expenses). Piazza mentions only the $25 cost for a condensed transcript of the Patricia Vidinich deposition, but Piazza seeks to recover the costs of several additional mini-transcripts, including $25 for the December 23, 2005 Whitehouse deposition; $75 for the depositions of Justin and Eliana Whitehouse and Jaime Lynn Stalker; $25 for the Wendy Peebles deposition; $25 for the Sharon Phelan deposition; and $25 for the Paul McGrath deposition. In total, Piazza seeks $200 in duplicate condensed transcript costs. This request is denied.

With respect to Piazza's copying expenses, Plaintiffs argue that the request for $923.24 "is not supported by any bill or receipt paid or otherwise." (Pl. Resp., at 14.) Section 1920(3) allows costs for "fees and disbursements for printing and witnesses." 28 U.S.C. § 1920(3). Under § 1920(4), moreover, a prevailing party need not "submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs." *Black and Decker v. Bosch Tools*, No. 04 C 7955, 2006 WL 3883921, at *3 (N.D. Ill. Nov. 20, 2006) (quoting *Northbrook Excess and Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991)). Here, Piazza has attached an invoice for the $923.24 in copying costs, and explains in its bill of costs that the expenses are related to the motion for summary judgment. Piazza is requesting $.14 per page, which is within the reasonable range, and Plaintiffs have not objected to any other aspect of the invoice. *See Shanklin*, 2006 WL 2054382, at *4 (per page copy rates between $0.10 and $0.20 are reasonable); *First City Securities, Inc. v. Shaltiel*, No. 92 C 2620, 1993 WL 408370, at *2 (N.D. Ill. Oct. 8, 1993) ("Costs for binding, inserting tabs and bates stamping are allowed here because these services are necessary to reproduce a document in a way that is organized and useful to the opposing party and the court.") Thus, Piazza's stated copying costs are allowed.

Finally, Plaintiffs object to the $585.80 Piazza spent on a special process server. (Pl. Resp., at 14.) Piazza has submitted an invoice indicating that he retained Spahn-Breckinridge & Associates, Inc. to serve Paul McGrath, a witness named by Plaintiffs who was deposed in this case. "[T]he Seventh Circuit has held that private process servers are taxable costs under 28 U.S.C. § 1920(1) provided that their rates do not exceed what it would cost to have the U.S. Marshals effectuate service of process." *Ridings v. Riverside Medical Ctr.*, No. 05-2134, 2007 WL 924020, at *1 (C.D. Ill. Mar. 26, 2007) (quoting *Ernst v. Anderson*, No. 02 C 4884, 2006 WL 163024, at *1 (N.D. Ill. Jan. 18, 2006)). The Code of Federal Regulations provide that the appropriate rate is "$45 per hour (or portion thereof) for each item served . . . plus travel costs and any other out-of-

pocket expenses." 28 C.F.R. § 0.114(a)(3). Piazza has requested $487.50 for Spahn-Breckinridge's investigation which, at $45 per hour, translates to approximately 10.8 hours. Piazza also seeks to recover $81 for the agency's mileage, and $17.30 in telephone expenses. All of these amounts appear reasonable to the court and are allowed.

Plaintiffs do not object to Piazza's claim for witness fees, and the court agrees that these expenses appear to reflect the statutory maximum of $40 per day plus reasonable travel costs at $0.445 per mile. *See Shanklin*, 2006 WL 2054382, at *5. (*See also* Piazza Bill of Costs, at 2-3.) Piazza's request for $141.33 in computerized legal research expenses will be addressed below as part of his motion for attorneys' fees. *See Medline Indus., Inc.*, 2004 WL 1921020, at *6.

In sum, Piazza is entitled to $8,795.41 in costs as follows: (1) $6,426.91 for depositions (including $1,229.90 for the December 15, 2005 deposition of Joel Whitehouse; $692.70 for the December 23, 2005 Whitehouse deposition; $291.60 for the John Piazza deposition; $987.20 for the depositions of Eliana Whitehouse, Justin Whitehouse, and Jaime Lynn Stalker; $317.80 for the Patricia Vidinich deposition; $304.40 for the Wendy Peebles deposition; $304.40 for the Richard Kling deposition; $328.60 for the Thomas Hess deposition; $353.65 for the Jerrold Lehmacher deposition; $358 for the Sharon Phelan deposition; $658.55 for the depositions of Michael Carey, Jr. and Michael Poplawski; $341.25 for the Paul McGrath deposition; $79.40 for the Thomas Bilyk deposition; $129.60 for the Robert Podlasek deposition; and $49.86 for the depositions of Peter Troy and Joseph Magats); (2) $1,128.74 in copying expenses; (3) $653.96 in witness fees; and (4) $585.80 for the special process server.

**II. Motion for Fees and Sanctions**

Piazza seeks to recover attorneys' fees for all of Plaintiffs' claims, as well as Rule 11 sanctions for the IIED claims. The court addresses each below.

**A. Attorneys' Fees**

Prevailing defendants in § 1983 actions may recover attorneys' fees "only upon a finding that the plaintiff's action was frivolous, unreasonable, or groundless." *Esposito v. Piatrowski*, 223 F.3d 497, 501 (7th Cir. 2000) (citing *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 422 (1978)). *See also Charles v. Daley*, 846 F.2d 1057, 1062 (7th Cir. 1988) (noting that 42 U.S.C. § 1988 provides an exception to the "American Rule" that each party to a legal dispute is responsible for paying its own fees). A defendant need not show either subjective or objective bad faith on the plaintiff's part, but must "demonstrate that the plaintiff's action is 'meritless in the sense that it is groundless or without foundation.'" *Munson v. Milwaukee Bd. of School Directors*, 969 F.2d 266, 269 (7th Cir. 1992) (quoting *Hughes v. Rowe*, 449 U.S. 5, 14 (1980)). Even where a claim was not patently frivolous at the outset of a lawsuit, a defendant may be entitled to fees if the plaintiff "continued to litigate after it became so." *Hughes*, 449 U.S. at 15. In determining whether a § 1983 claim is frivolous, unreasonable, or groundless, courts consider whether (1) the issue is one of first impression requiring judicial resolution; (2) the controversy is sufficiently based upon a real threat of injury to the plaintiff; (3) the trial court has made a finding that the suit was frivolous under the *Christiansburg* guidelines; and (4) the record would support such a finding. *Reichenberger v. Pritchard*, 660 F.2d 280, 288 (7th Cir. 1981).

Piazza argues that Whitehouse filed the First Amendment retaliation claim solely for political motives. There is some support for this theory. Whitehouse claimed that the minor spat between his son and Piazza's son constituted an assault and/or battery, and threatened to "sue everybody and call Channel 5." He issued an admittedly false press release prior to the April 2005 election accusing the Lemont police department of refusing to take a report of his 911 call, when in fact, he

12

and his attorney were able to read Sergeant Lehmacher's admittedly accurate report the very same night of the incident. Just days before the election, moreover, on March 21, 2005, Whitehouse filed this federal lawsuit, despite contrary advice from his former co-worker, Assistant States Attorney Bilyk, that he have the Bridgeview or Markham courthouses issue a summons for Piazza to appear on his complaints of assault, battery, and trespass.

Plaintiffs argue that fees are inappropriate given this court's acknowledgment that the Seventh Circuit has never determined the standards to be applied in a § 1983 case where, as here, there is no employment relationship between the parties. (Pl. Resp., at 9.) Significantly, however, Plaintiffs never mentioned this issue; only Piazza brought it to the court's attention. *Whitehouse*, 2007 WL 641543, at *8. Plaintiffs also argue that they "had a sound legal theory" and submitted some evidence of an adverse action to support a § 1983 claim. (Pl. Resp., at 10-11.) They note that there was no dispute that Whitehouse had engaged in protected political speech, and argue that "Whitehouse had good reason not to file misdemeanor charges after seeing that the Lemont police were not willing to even examine his real complaints." (*Id.* at 9-10.)

"Any defendant who seeks fees under § 1988 for the cost of defense in the district court has a tough row to hoe" because "the legal rule that § 1988 creates is asymmetric in plaintiffs' favor." *Redwood v. Dobson*, 476 F.3d 462, 470 (7th Cir. 2007). Thus, "fees that have been assessed have been limited to situations where plaintiff's conduct was abusive, or merely a disguised effort to harass or embarrass the defendant." *Badillo v. Central Steel & Wire Co.*, 717 F.2d 1160, 1164 (7th Cir. 1983). Here, there is some evidence that Plaintiffs' First Amendment and IIED claims were politically motivated, and that Whitehouse wanted to harass or embarrass Piazza due to an impending election. At the same time, there is also some evidence that Piazza may have committed assault and/or battery and trespass against Whitehouse, and that the Lemont police department did not take these claims entirely seriously. On balance, the court declines to find that the pursuit of these claims was "frivolous" within the meaning of § 1988.

### B. Rule 11 Sanctions

Piazza also asks the court to impose Rule 11 sanctions against Plaintiffs for their pursuit of the IIED claims. The primary purpose of Rule 11 is to deter baseless or frivolous filings. *Brotherhood Mut. Ins. Co. v. Ervin Cable Constr., LLC.*, No. 05 C 3408, 2006 WL 3431915, at *5 (N.D. Ill. Nov. 27, 2006). Under Rule 11, an attorney filing a complaint certifies that "to the best of the filer's and signer's knowledge, information and belief, formed after a reasonable inquiry under the circumstances, the pleading is not being presented for an improper purpose, the claims and legal contentions are warranted by existing law or by a nonfrivolous argument for change in the law, and there was evidentiary support for the allegations and factual contentions." *Id.* (citing FED. R. CIV. P. 11(b)(1) - (3)). A court may impose Rule 11 sanctions on lawyers, parties, or both if a lawsuit is "not well grounded in fact and is not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." *Cuna Mut. Ins. Society v. Office and Professional Employees Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006); *Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 823 (7th Cir. 2001). The court must "undertake an objective inquiry into whether the party or his counsel should have known that his position [wa]s groundless." *Id.* (quoting *National Wrecking Co. v. International Brotherhood of Teamsters, Local 731*, 990 F.2d 957, 963 (7th Cir. 1993)). The focus is on what counsel knew at the time the complaint was filed, and not what was subsequently revealed in discovery. *Brotherhood Mut. Ins. Co.*, 2006 WL 3431915, at *5.

Piazza argues that Whitehouse and his counsel should have known that neither Justin nor Eliana suffered any emotional distress as a result of Piazza's conduct. Neither child received any counseling or medical treatment; according to the mother, Eliana was "oblivious" to the incident; and Justin went back inside and finished practicing piano after the incident, continued to perform well in school and function socially with his friends, and was always able to sleep through the night. After completing the depositions of Justin, Eliana, and Jamie Lynn Stalker, moreover, Plaintiffs

14

failed to withdraw the IIED claims, yet they provided absolutely no argument whatsoever in support of them.

Plaintiffs argue that Justin and Eliana were in fact "emotionally upset by the actions of both Piazza in threatening and chest bumping their father and Shaughnessy by downplaying and belittling Justin's account of what happened." (Pl. Resp., at 12-13.) This, of course, falls far short of the requirement that conduct inflict "severe emotional distress" and be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Thomas v. Fuerst*, 345 Ill. App. 3d 929, 936, 803 N.E.2d 619, 625 (1st Dist. 2004); *Schiller v. Mitchell*, 357 Ill. App. 3d 435, 447, 828 N.E.2d 323, 333 (2d Dist. 2005). Plaintiffs also stress that Piazza would have had to depose Justin, Eliana, and Jaime Lynn Stalker even in the absence of the IIED claims. They note that a majority of the questions posed to each witness related to their status as eyewitnesses to the events of January 25, 2005 and to the school bus incident, as opposed to the emotional distress claims.

The court agrees that the IIED claims were extremely weak. The court declines, however, to impose Rule 11 sanctions. "As a condition for imposing [Rule 11] sanctions by motion of another party, that party must serve the motion for sanctions on the offending attorney twenty-one days before filing it with the court." *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1012 (7th Cir. 2004). The motion may be filed with the court only if the offending attorney fails to withdraw or correct the challenged "paper, claim, defense, contention, allegation, or denial." FED. R. CIV. P. 11(c)(1)(A); *Corley*, 388 F.3d at 1012. Here, Piazza has not presented any evidence that he served the Rule 11 motion on Plaintiffs prior to filing it with the court. Nor is there any evidence that he asked Plaintiffs to withdraw the IIED claims before moving for summary judgment. Thus, Piazza's motion for sanctions is denied.

## **CONCLUSION**

For the reasons stated above, Defendants' motions for costs [Doc. 154, 155, and 158] are all granted in part and denied in part. Piazza's motion for attorneys' fees and for Rule 11 sanctions [Doc. 160] is denied.

ENTER:

Dated: May 21, 2007

_____
NAN R. NOLAN
United States Magistrate Judge